# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos.  02-3190/02-3192/02-3881

_____

Michael Jerome Ollie,
            *
            *
 Plaintiff-Appellee/     *
 Cross-Appellant,      *
            * Appeal from the United States
 v.           * District Court for the Southern
            * District of Iowa.
Titan Tire Corporation,    *
            *
 Defendant-Appellant/    *
 Cross-Appellee.      *

_____

Submitted:  June 11, 2003
Filed:  July 15, 2003

_____

Before BOWMAN, MURPHY, and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

Titan Tire Corporation (Titan Tire) appeals from the judgment entered in favor of Michael Ollie after a jury trial on his claim of discriminatory failure to hire, the denial of its post trial motion, and the front pay order of the district court[1]. Titan Tire argues that it was entitled to judgment as a matter of law because there was

_____

[1] The Honorable Harold D. Vietor, United States District Judge for the District of Southern District of Iowa, presiding.

insufficient evidence to establish that it regarded Ollie as disabled within the meaning of the Americans with Disabilities Act of 1990 (the ADA), 42 U.S.C. § 12101 et seq (2003), and the Iowa Civil Rights Act of 1965 (ICRA), Iowa Code § 216.1 et seq (2002). In the alternative Titan Tire contends that if liability under the ADA was established, the district court abused its discretion in awarding two years of front pay at an unrealistic hourly rate. Ollie cross appeals, claiming the district court abused its discretion by only awarding two years of front pay instead of ten, and erred in vacating his punitive damage award. We affirm.

I.

As a child, Ollie suffered from asthma, but by the time he reached high school he was no longer experiencing breathing problems. After graduating from high school, Ollie joined the Navy. He experienced breathing problems while in the Navy and received a medical discharge, with a 50% disability rating. In 1997, he was hired by EFCO. Prior to starting work at EFCO, Ollie was given a physical by Dr. Sciorrotta and filled out a form stating: "I have asthma." Dr. Sciorrotta found that Ollie was medically able to do the job at EFCO and Ollie began work there as a general laborer. He was later transferred to a new position where he was required to work in an area filled with thick, chalky smoke. Ollie became ill and missed several months of work, and EFCO asked Dr. Sciorrotta to reevaluate him. Dr. Sciorrotta concluded that Ollie could return to work with a respirator. Shortly after that, Ollie's employment at EFCO was terminated.

On August 4, 1998, Ollie applied for a job at Titan Tire, which was in the process of hiring approximately 1000 replacement workers to fill 550-600 jobs left vacant by a strike. Ollie applied for any open position and identified himself as a disabled veteran on his application. Human Resources Director Joyce Kain interviewed Ollie and offered him a job, contingent upon a physical examination and a drug screen.

Ollie went for his physical examination on August 2, 1998. The examining physician was again Dr. Sciorrotta, whom Ollie had just seen a few months earlier in connection with his job at EFCO and who had visited the Titan Tire plant as the company physician. On the health questionnaire, Ollie answered "yes" to the question "Have you ever had—asthma?" Dr. Sciorrotta performed the physical examination and checked the box on the examination form that stated: "The Examinee is medically able to do the essential functions of the job with accommodations listed below." In the space below he wrote: "Pt. has asthma. May have difficulty in areas [with] dust or fumes."

The hiring process at Titan Tire involved two people. After Kain interviewed the applicants and scheduled them for physicals, she turned everything over to Betty Thurman. Dr. Sciorrotta's office would call Thurman with the results of a physical and drug screen, and based on that report Thurman would notify the applicant as to whether he or she had passed. The written medical report was sent to Titan Tire after the oral report had been given over the phone and after Thurman had already contacted the applicant. Thurman would make a note on the application if the oral report indicated the applicant had not passed the physical exam. Thurman testified that she wrote on Ollie's application: "Asthma, no working where dust or fumes." Dr. Sciorrotta testified at trial that his staff had been trained to report exactly what he had written on the examination report and not to interpret what he had written.

After her conversation with Dr. Sciorrotta's office, Thurman discussed with Kain what the doctor had reported about Ollie. They concluded that because there was no place in the plant that did not have dust or fumes, there was no job available for him. Thurman wrote on Ollie's application, "Hold, no job at this time," and then notified Ollie that there was no job available because the doctor had said he could not work around dust or fumes. Kain and Thurman testified that dust and fumes are generated throughout the Titan Tire plant due to the nature of the tire building process, and that the only place in the plant without dust or fumes is in the office area.

-3-

Ollie inquired about a job in the office, but there were no positions available at that time. Kain and Thurman agreed that if an office job became available, they would consider Ollie.

Ollie looked for a job for the next nine months and finally obtained one on June 1, 1999 at Action Warehouse, which is located in the same plant and building as Titan Tire.[2] At the time of trial Ollie had worked processing and reworking tires at Action Warehouse for three years. Ollie testified at trial that he was then being paid $10.25 per hour at Action Warehouse. He also testified that he would have been earning between $13.60 and $14.30 per hour as a tire builder at Titan Tire, the position given to a friend who had encouraged Ollie to apply for work there. Titan Tire presented evidence that it would have offered Ollie the job of grade one forklift driver and that he would have accepted it. That job would have paid only $9.00 per hour to start, but if Ollie had been hired at its plant and were still working as a forklift driver at the time of trial, he would have then been making $11.10 per hour. Titan Tire admitted that if it had hired Ollie as a forklift driver in August 1998, it would have been paying him more per hour than he received at Action Warehouse until Action raised his pay in November 1999.

Ollie filed his complaint with the district court on August 22, 2000. He alleged Titan Tired had discriminated against him based on an actual and perceived disability under the ADA and ICRA. He also asserted a claim for defamation, but it was dismissed on summary judgment. Ollie sought damages for emotional distress, backpay, punitive damages, front pay, and attorney fees. The case was tried to a jury

---

[2] The evidence at trial showed that Action Warehouse and Titan Tire are in the same building, and a conveyor belt carries tires from Titan Tire through a wall into Action Warehouse where they are processed and shipped. Ollie argued at trial that this showed that he could have worked at Titan Tire without any health problems because he had been working in similar conditions just on the other side of the dividing wall for three years.

in April 2002. At the close of plaintiff's case, Titan Tire moved for judgment as a matter of law. The district court granted Titan Tire's motion with respect to Ollie's claims of actual disability, but denied his motion as to his perceived disability claim. The court also ruled that it would submit punitive damages to the jury, but would reconsider the motion later if necessary. On April 17, 2002, the jury returned its verdict in favor of Ollie and awarded him $32,000 in backpay and $18,000 in punitive damages.

Titan Tire filed a motion for judgment as a matter of law or a new trial, which the court granted in part. The court concluded that the evidence was sufficient to support the jury's finding of liability and award of backpay, but it vacated the punitive damage award because it found no evidence that Titan Tire had acted with malice or reckless indifference to Ollie's federal rights. The court ordered the parties to submit briefs on the issue of front pay. The district court then determined that Ollie was entitled to two years of front pay using a wage differential of $3.35 per hour. That amount was the difference between what Titan Tire was paying tire builders and what Ollie was making at Action Warehouse. The total amount awarded under this formula was $13,936, and judgment was then entered in the amount of $45,936.

Titan Tire appeals, claiming that it was entitled to judgment as a matter of law because there was insufficient evidence that it failed to hire Ollie because it regarded him as disabled, and alternatively that the district court abused its discretion by awarding two years of front pay based on the $3.35 per hour wage differential. Ollie cross appeals, arguing that the district court erred in not awarding more than two years of front pay and abused its discretion in vacating the judgment for punitive damages.

II.

Titan Tire argues that it was entitled to judgment as a matter of law because Ollie failed to offer sufficient evidence that it regarded him as disabled within the meaning of the ADA. It contends that Ollie only established that it regarded him as medically unable to work in its plant, not that it regarded him as having a disability precluding him from working in a broad range of jobs. Titan Tire argues that its decision not to hire Ollie was based upon medical advice, which is not illegal and demonstrates that the decision was not the result of archaic attitudes about people with disabilities or based on an erroneous perception of disabled persons.

Ollie responds that there was sufficient evidence to establish that Titan Tire perceived him as having a disability and that it perceived him as incapable of performing the functions of any warehouse or manufacturing position because all such positions involve working around dust and fumes. He also contends the company's belief that he was disqualified from all jobs at its plant is sufficient to prove that he was precluded from a broad class of jobs. He further argues that its decision was not based on medical advice, that the company had been informed that he could perform the essential functions of the factory jobs, and that it unilaterally decided that he could not work in any position.

Denial of a motion for judgment as a matter of law is reviewed de novo. See Racicky v. Farmland Industr., Inc., 328 F.3d 389, 393 (8th Cir. 2003). The reviewing court must decide whether there is sufficient evidence to support the jury's verdict when examined in the light most favorable to the verdict. Id. Judgment as a matter of law is only appropriate when there is no reasonable inference to be made from the evidence which can sustain the verdict. Id. There are two ways in which an employee can show that he was regarded as disabled within the meaning of the ADA. He can either show that the employer mistakenly believed that he had a physical impairment that substantially limits one or more major life activities, or that the

-6-

employer mistakenly believed that an actual, nonlimiting impairment substantially limited one or more major life activities. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999). When the major life activity considered to be substantially limited is working, the ADA requires at a minimum that the employee is perceived as unable to work in a broad class of jobs. Id. at 491; see also Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995) (impairment which prevent employee from performing a narrow range of job is not substantially limiting).

The district court concluded that there was sufficient evidence that Titan Tire regarded Ollie as being "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). The district court found from the evidence that Titan Tire believed that Ollie could not perform any manufacturing or warehouse facility job in the Des Moines area, because of its view that all such facilities would present an environment of dust and fumes.

Titan Tire decided not to hire Ollie based on the phone call from Dr. Sciorrotta's office. As a result of that phone call, Thurman believed that Ollie was unable to work in the plant because he could not work around dust or fumes. Titan Tire contends that its actions were similar to those in several cases holding no violation of the ADA when the employer's decision was based upon a doctor's written restrictions, rather than upon speculation, stereotypes, or myths about people with disabilities, and where the restrictions only prevented the employee from working at a narrow range of jobs. See Wooten, 58 F.3d at 386; see also Conant v. City of Hibbing, 271 F.3d 782, 785–86 (8th Cir. 2001); Brunko v. Mercy Hospital, 260 F.3d 939, 942 (8th Cir. 2001).

The cases cited by Titan Tire involve situations where employees had actual limitations placed on their working abilities which made it impossible to perform all the functions of certain positions. See Wooten, 58 F.3d at 384 (doctor's note

restricted work activities to light duty, no work with meat products, no work in cold environment, and lifting twenty pounds maximum); Conant, 271 F.3d at 784 (doctor's report stated that Conant should not lift more than thirty pounds and should not bend or squat); Brunko, 260 F.3d at 941 (physician issued permanent lifting restriction of no more than forty pounds). In those cases the employer did not regard the employee as disabled, and had reasonably relied on restrictions issued by the treating physician when making its employment decisions. Although the restrictions precluded the employees from performing the specific jobs for which they had applied or in which they had previously been working, they were not excluded from a broad range of similar jobs which did not have the same unique requirements.

Dr. Sciorrota's written report, unlike the physician restrictions in the cases Titan Tire cites, stated that Ollie was "medically able to do the essential functions of the job with the accommodations listed below." (emphasis added). In the space below Dr. Sciorrotta wrote "Pt. has asthma. May have difficulty in areas [with] dust or fumes." (emphasis added). Thurman actually wrote on Ollie's application, however: "Asthma, no working where dust or fumes." (emphasis added). Moreover, Ollie did not apply for one specific position, but applied instead for any open position, and Titan Tire did not change its assumption that Ollie was unable to work at its plant after receiving the written report from Dr. Sciorrotta. Its position continued to be that Ollie was unable to work at the plant because conditions might aggravate his asthma.

Titan Tire thus did not rely on a doctor's restrictions in the same way as the employers in Wooten, Conant, and Brunko, but rather relied on its own interpretation of the doctor's advice and its own opinion that Ollie could not perform all essential functions of any available job. It did not see Ollie as precluded from performing only one type of job because of his restrictions, but rather concluded that he was precluded from performing any job which would put him in contact with dust or fumes. At trial, Kain and Thurman admitted that they believed all warehouse and manufacturing jobs

involved working around dust and fumes. After examining the record, we find that there was sufficient evidence for the jury to find that Titan Tire perceived Ollie as disabled within the meaning of the ADA. It was therefore not entitled to judgment as a matter of law on Ollie's perceived disability claim.

Alternatively, Titan Tire argues that if the district court did not err in denying its motion for judgment as a matter of law, it abused its discretion in awarding two years of front pay at an inflated hourly rate. It argues that front pay is inappropriate because the jury awarded Ollie backpay based on the wage of the higher tire builder position until April 2002. It claims that this award granted him more than he could have expected to earn at Titan Tire because he would have been hired as a forklift driver, rather than a tire builder. Ollie admitted at trial that he would have accepted the job of forklift driver, and the high rate of job turnover that occurred when the striking workers returned would have made it unlikely that Ollie would have worked at Titan Tire until April 2002. It also argues that because Ollie admitted that by November 1999 he was earning the same amount at Action Warehouse as he would have earned if he had started out as a forklift driver at Titan Tire, the backpay award was overly generous and that the addition of front pay was nothing more than a windfall. Alternatively, it argues that anything more than six months of front pay would be an abuse of discretion because Ollie was unemployed for only nine months before he was hired at Action Warehouse. Titan Tire also contends that it was an abuse of discretion to use the higher rate for the tire maker job when determining the wage differential because Ollie admitted that he would have accepted the fork lift driver job.

Ollie responds that the amount of backpay cannot be used to determine whether front pay is appropriate and that the district court abused its discretion in not awarding ten years of front pay because the amount of front pay awarded was not sufficient to put him in the same position he would have been in if he had been hired by Titan Tire. He also argues that the district court used the correct wage differential

of $3.35 per hour, the difference between the wage of a tire builder at Titan Tire and Ollie's current pay at Action Warehouse, when making the front pay determination because he and his similarly qualified friend both applied for any open job at Titan Tire and his friend was hired as a tire maker.

A district court may award "sufficient front pay to make a party whole when reinstatement is impractical or impossible." E.E.O.C. v. HBE Corp., 135 F.3d 543, 555 (8th Cir. 1998). The question of front pay is a difficult one because it involves the consideration of many complicated factors. See Standley v. Chilhowee R-IV Sch. Dist., 5 F.3d 319, 322 (8th Cir. 1993). Front pay is an equitable remedy, which should address the plaintiff's equitable needs, including the ability to obtain employment with comparable compensation and responsibility. HBE Corp., 135 F.3d at 555. We review the district court's award of front pay for abuse of discretion. See Mathieu v. Gopher News Co., 273 F.3d 769, 778 (8th Cir. 2001).

In determining the issue of front pay the district court considered the evidence and decided Ollie was entitled to the rate of pay of a tire builder at Titan Tire. Titan Tire contends that the district court abused its discretion by considering the higher paying tire builder job in its front pay calculation. Although Titan Tire did present evidence to show that Ollie would have accepted a job as a forklift driver, it is not clear from the record that Titan Tire ever offered or intended to offer him such a position and it did hire his friend as a tire builder. The jury heard the conflicting evidence about the different hourly rates and the various positions before it awarded backpay by crediting Ollie's evidence. Later the district court as fact finder determined that the evidence weighed in favor of awarding Ollie front pay based on the pay of tire builders at Titan Tire, and we see no evidence that it abused its discretion in making this decision. Considering the facts that Ollie was unemployed for nine months after applying for a position at Titan Tire and that it took him six months working at Action Warehouse to earn an hourly rate equal to the starting salary of the lower paying job of forklift driver, we cannot say the district court

abused its discretion in determining that Ollie should be allowed a total of two years of front pay in order to achieve compensation comparable to the higher paying job of tire builder.

Ollie contends that the district court abused its discretion by only awarding two years of front pay, but we do not agree. Longer terms of front pay are usually awarded when it is unlikely that the plaintiff will ever be able to achieve the level of income and responsibility that he enjoyed in his earlier position or when it would take the plaintiff a significant number of years to gain the level of seniority and responsibility equivalent to the job lost. See Mathieu, 272 F.3d at 779; Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101, 3 F.3d 281, 286 (8th Cir. 1993). Ollie is relatively young and should therefore have a number of years to mitigate his damages. He has already obtained other employment at Action Warehouse, which, while admittedly not as high paying as the jobs at Titan Tire, is similar in terms of seniority, responsibility, and opportunity for advancement. Ollie applied for an entry level position in a warehouse setting and within nine months of not being hired, he obtained another entry level warehouse position right next door to Titan Tire. The district court determined that two years was sufficient for Ollie to obtain a comparable wage, and considering the other similarities between the two jobs, we do not find that this was an abuse of discretion.

Ollie also argues on his cross appeal that the district court erred in determining that there was insufficient evidence of malice or reckless indifference on the part of Titan Tire to support a punitive damages award. He argues that the facts in this case show intentional misconduct by Titan Tire. He contends there was evidence that Titan Tire discriminated while being aware that it could be violating federal law and acted maliciously by not investigating what amount of fumes and dust would adversely affect his working ability. Titan Tire responds that the facts in this case do not rise to the level of intentional discrimination required by Kolstad v. Am. Dental Ass'n, 527 U.S. 526 (1999). Titan Tire further argues that there was no evidence of

actual malice, evil intent, or reckless indifference to Ollie's federal rights. It therefore contends that the district court correctly vacated the judgment for punitive damages.

Under the ADA, punitive damages are available to plaintiffs who have suffered intentional discrimination by an employer acting "with malice or with reckless disregard to the federally protected rights of [the plaintiff]." 42 U.S.C. § 1981a(b)(1) (2003). The Supreme Court in Kolstad stated that "'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Kolstad, 527 U.S. at 535. This case is substantially similar to Webner v. Titan Distrib., Inc.. In Webner, this court found that while the employer was culpable when it terminated an employee because it believed that his injury would limit his working abilities and that it did not have a job suited to his disability, its actions were "consistent with an employer acting to protect itself against the possible sporadic absence of an employee," and therefore did not rise to the level of maliciousness required to sustain punitive damages. Webner v. Titan Distrib., Inc., 267 F.3d 828, 837 (8th Cir. 2001). Titan Tire's actions do not demonstrate malice or evil intent, but rather an unfortunately mistaken interpretation of a doctor's report, and its attempt to protect itself and its potential employee from repeated health problems and absences. The district court therefore correctly vacated the punitive damage award based on insufficient evidence of malice or reckless disregard for Ollie's federal rights.[3]

For these reasons, the judgment of the district court is affirmed.

---

[3]Ollie also argued in his cross appeal that if this court were to reinstate his punitive damage award, it should remand for an award of attorney fees attributable to the punitive damage claim. Since we find that the district court did not err in vacating the punitive damage award, this suggestion is moot.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.