# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 06-1414

_____

Robert Wayne Chalfant,

              Appellee,

      v.

Titan Distribution, Inc.; Titan
International, Inc.,

              Appellants.

\*
\*
\*
\*
\*    Appeal from the United States
\*    District Court for the
\*    Southern District of Iowa.
\*
\*
\*
\*

_____

Submitted: September 28, 2006
Filed: January 22, 2007

_____

Before LOKEN, Chief Judge, SMITH and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found that Titan Distribution, Inc. ("Titan") discriminated against Robert Wayne Chalfant based on Chalfant's disability and awarded him $60,000 in back pay and $100,000 in punitive damages. The district court[1] then awarded Chalfant $18,750

_____

[1]The Honorable Ross A. Walters, Chief United States Magistrate Judge for the Southern District of Iowa, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

in front pay and denied Titan's post-trial motions. Titan appeals. For the reasons discussed below, we affirm.

## I.    BACKGROUND

Titan, a division of Titan International, Inc., hired Quintak, Inc. to run its tire mounting and distribution operation. Quintak employees worked at Titan's building and used Titan's equipment. In July 2002, Titan decided to cut costs by terminating Quintak and hiring its own employees. William Campbell, president of Titan, announced that Titan would be hiring only a portion of Quintak's employees. All Quintak employees who wanted to work at Titan were required to apply for a position with Titan and have a qualifying physical. Nadis Barucic and Cheryl Luthin oversaw the application process.

Chalfant worked for Quintak as a second shift supervisor in the tire and wheel mounting division. His duties included loading trucks with a forklift. Jerry Williams was Chalfant's direct supervisor, and Martin Craig Warren was Williams's supervisor. At the time of Quintak's termination, Chalfant was 56-1/2 years old and had been working for Quintak for five years. Chalfant had suffered a heart attack in 1992 and had undergone carpal tunnel surgery and heart by-pass surgery in 1997. He had arthritis in his back, neck, ankle and hands.

Chalfant applied at Titan for the same position he had with Quintak, second shift supervisor in the tire and wheel mounting division. He believed that this position would have the same duties and responsibilities with Titan as it did with Quintak. In his application forms, Chalfant stated on a Voluntary Applicant Identification Survey that he was physically handicapped. He based this conclusion on the fact that he had numerous physical ailments.

The final part of the application process, the physical examination, was conducted by Dr. Anthony Sciorrota. Dr. Sciorrota determined that Chalfant could work in his current capacity, including driving a forklift. Dr. Sciorrota also wrote on the exam record that Chalfant would need to have a functional capacity examination if he was required to do heavy lifting. Barucic received the exam record, wrote "px OK for lift driving" on the top of the record and sent it, along with the application, to Luthin. Chalfant continued working as a second shift supervisor in the tire and wheel mounting division as an employee of Labor Ready, a temporary work service used by Titan during the application period.

At some point after the physical exam, Barucic wrote "not pass px" on top of Chalfant's application. Barucic testified that he did not make the decision, but he did not know who told him to write that note. Luthin, in her deposition testimony, said that she did not know who decided that Chalfant failed the physical. However, during trial, Luthin changed her testimony and said that Cheri Holley, corporate counsel, made the decision in August 2002. At trial, Luthin testified that Barucic gave Holley the documents and Holley decided that Chalfant did not pass the physical. Holley did not testify at the trial.

During the first week of August 2002, Williams told Chalfant that he was included in a list of Quintak employees to be retained by Titan. On August 8, 2002, Williams and Warren told Chalfant that he had failed the physical and would not be hired. Jerry Palmer, the second shift supervisor in the tire distribution division, assumed the duties of Chalfant's second shift tire and wheel mounting supervisor position. By September 30, 2002, Titan had eliminated the entire second shift in the tire and wheel mounting division.

After Titan refused to hire him, Chalfant took a job with AMPCO Systems, a parking ramp management company, within two months. At AMPCO, Chalfant

performed general service work, walking up to five miles a day and lifting more than he did as a Quintak employee. His wages were half of what he earned at Quintak. Once he started working at AMPCO, Chalfant continued his job search by reviewing newspaper classifieds for other jobs. The day after he accepted his job with AMPCO, Chalfant received another offer. He declined that job offer because it required Chalfant to lift 150 pounds and Chalfant did not believe that he could do that type of lifting.

Prior to litigation proceedings, Titan maintained that it did not hire Chalfant because he did not pass the physical. Titan proferred this reason to the Iowa Civil Rights Commission. In a letter to the Commission, Titan said that Chalfant had a conditional offer of employment before the physical examination that was withdrawn after he failed the physical. During litigation, however, Titan claimed that Chalfant was not hired as a second shift supervisor because the entire second shift was going to be eliminated.

Chalfant sued Titan for disability and age discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*., respectively, and the parallel provisions of the Iowa Civil Rights Act, Iowa Code ch. 216. The district court granted Titan's motion for summary judgment as to the age discrimination claims and denied Titan's motion for summary judgment as to the disability discrimination claims. A jury found for Chalfant on the disability discrimination claims, awarding $60,000 in back pay and $100,000 in punitive damages. The district court then awarded $18,750 in front pay. The district court denied Titan's motion for judgment as a matter of law, its alternative motion for a new trial, its motion for remittitur[2] and its motion to alter or amend the front pay award under Fed. R. Civ. P. 59(e). Titan appeals.

---

[2]Titan challenged the award of back pay in its motion for judgment as a matter of law. However, we adopt the district court's characterization of Titan's back pay challenge as a motion for remittitur.

## II.     DISCUSSION

On appeal, Titan contends that: (i) it is entitled to judgment as a matter of law or, in the alternative, a new trial because the evidence was insufficient both to support a verdict that Titan discriminated against Chalfant based on his disability and to allow the district court to submit the issue of punitive damages to the jury; (ii) the district court clearly abused its discretion in determining that Chalfant mitigated his damages to permit an award of back pay; and (iii) the district court abused its discretion in awarding Chalfant front pay.  We address each argument in turn.

### A.     Sufficiency of the Evidence

Titan argues that it is entitled to judgment as a matter of law or, alternatively, a new trial because there was insufficient evidence for the jury's verdict of discrimination and for the jury to consider the issue of punitive damages.  We review these issues under both standards of review and find that the district court did not err in denying Titan's motion for judgment as a matter of law nor did it abuse its discretion in denying Titan's motion for a new trial.

### 1.     Judgment as a Matter of Law

"We review de novo the denial of a motion for judgment as a matter of law, applying the same standard as the district court."  *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 899 (8th Cir. 2006).  Judgment as a matter of law is granted only if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  *Id*. at 899-900 (quoting Fed. R. Civ. P. 50(a)(1)).  We grant the nonmoving party all

reasonable inferences and view the facts in the light most favorable to the nonmoving party. *Id*. at 900.

### a. ADA Discrimination

A plaintiff alleging discrimination based on a disability under the ADA must establish a prima facie case.[3] The three elements of this prima facie case are (1) that the plaintiff has "a disability within the meaning of the ADA;" (2) that he is qualified "to perform the essential functions of the job, with or without reasonable accommodation;" and (3) that he suffered "an adverse employment action due to a disability." *Wenzel v. Missouri-Am. Water Co.*, 404 F.3d 1038, 1040 (8th Cir. 2005). Titan challenges the sufficiency of the evidence supporting the jury's finding for Chalfant on all three elements of the prima facie case.

With respect to the first element of the prima facie case, the ADA defines disability in the following three ways: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Webner v. Titan Distribution, Inc.*, 267 F.3d 828, 833 (8th Cir. 2001). A person is regarded as disabled if "(1) the employer mistakenly believes that the employee has an impairment (which would substantially limit one or more major life activity), or (2) the employer mistakenly believes that an *actual* impairment substantially limits one or more major life activity." *Wenzel*, 404 F.3d at 1041.

---

[3]We use the same analysis for disability discrimination claims brought under the ADA and the Iowa Civil Rights Act. *Mitchell v. Iowa Prot. & Advocacy Servs., Inc.*, 325 F.3d 1011, 1015 (8th Cir. 2003). Therefore, we need not separately analyze the Iowa Civil Rights Act claim.

Major life activities are activities such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Conant v. City of Hibbing*, 271 F.3d 782, 784 (8th Cir. 2001) (per curiam) (quoting 29 C.F.R. § 1630.2(i)). In order to be regarded as disabled with respect to the major life activity of working, the employer must mistakenly believe that the actual impairment substantially limits the employee's ability to work. A substantial limitation is present only when the employee is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Id.* at 784-85 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). If an employer believes that an employee is unable to perform "one specific job," then the employee is not regarded as disabled. *Wenzel*, 404 F.3d at 1041.

Titan regarded Chalfant as disabled because it mistakenly believed that his physical ailments substantially limited his ability to work in a broad range of jobs. Chalfant wrote in his application packet that he considered himself physically handicapped because of his ailments. Titan therefore knew about the ailments. Dr. Sciorrota, after conducting a physical of Chalfant, wrote that Chalfant could operate a forklift. He did not find that Chalfant failed the physical, although he did recommend that Chalfant undergo a functional capacity examination if he was required to do heavy lifting.

Titan argues that, at most, it only believed that Chalfant was incapable of performing the duties of the sole position of second shift supervisor in the tire and wheel mounting division. Chalfant only applied for that position, and Titan declined to hire Chalfant for that one position. If Titan did not believe that Chalfant was substantially limited in his ability to perform either a class of jobs or a broad range of jobs in various classes, Titan argues that Chalfant cannot show that he was regarded as disabled by Titan.

Giving all reasonable inferences to the jury's verdict in favor of Chalfant, we find sufficient evidence for a reasonable jury to conclude that Titan believed Chalfant's impairments substantially restricted his ability to work in a class of jobs or a broad range of jobs in various classes. While Chalfant only applied for the second shift supervisor position, that position did not require unique or strenuous lifting. Titan employees testified that there was no lifting requirement, or even a job description, for the second shift supervisor position. Chalfant also testified that he had not been required to do any heavy lifting when he was the second shift supervisor for Quintak and Labor Ready. In the absence of any job description by Titan, Chalfant's vocational expert relied on the occupational literature's classification of a second shift supervisor and testified that if Titan believed Chalfant was unable to perform the duties of a second shift supervisor, a job that is classified as having light to medium strength demands, Chalfant would have been prevented from performing 70 percent of the jobs in the Dictionary of Occupational Titles. Thus, there was sufficient evidence from which a reasonable jury could have found that Titan did not believe that a person with Chalfant's medical impairments could work in a class of jobs or a broad range of jobs in various classes. Therefore, the jury could have reasonably found that Titan regarded Chalfant as disabled.

As to the second element of the prima facie case, there must be sufficient evidence for a reasonable jury to find that a person was qualified to perform the essential functions of the job. These essential functions are the "fundamental job duties." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 786 (8th Cir. 2004) (quotation omitted). While Chalfant must present evidence that he is qualified, Titan must first identify the fundamental job duties. Evidence that can be used to identify job duties includes:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing

the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.

*Id.* (quoting *Heaser v. The Toro Co.*, 247 F.3d 826, 831 (8th Cir. 2001)).

Titan first argues that it cannot identify the fundamental job duties of the position of a second shift supervisor in the tire and wheel mounting division because that position did not exist after September 30, 2002. However, this argument fails because there was an available position at the time Titan decided not to hire Chalfant for the position. Titan had not announced the elimination of the position, the position was still on the organizational chart, and Chalfant actually applied for the position pursuant to Titan's invitation.

Titan then shifts its defense, claiming that the supervisor position requires significant walking and heavy lifting at times. Palmer, the second shift supervisor who assumed Chalfant's duties, testified that he had to walk more in his position after Titan replaced Quintak. Chalfant's doctor, Dr. Jeffrey Schoon, testified that Chalfant could not lift more than five pounds or walk more than one-half mile in one day. With this evidence, Titan argues that Chalfant would not have been able to meet the requirements of the second shift supervisor position.

Chalfant presented evidence that he performed the essential job functions of his position as second shift supervisor with Quintak. Chalfant testified that, as a supervisor, he was in charge of "keeping the work force moving and getting the product out the door." He also testified that he was required to drive a forklift and occasionally lift tires. Chalfant then presented evidence that he successfully completed the supervisor position duties at Titan as a Labor Ready employee during the first week of August, before he was told that he would not be hired. Furthermore,

the jury heard evidence concerning Chalfant's new position at AMPCO. In that position, Chalfant testified that he walked over five miles each day. Chalfant argued that he offered Dr. Schoon's testimony to prove his arthritis and not to address his ability to perform his job. Chalfant's vocational expert considered Chalfant's limitations and testified that he would be able to perform the supervisor position as described by Titan. The jury heard the evidence of both parties, and that evidence was sufficient for a reasonable jury to determine that Chalfant was able to perform the essential functions of the second shift supervisor position.

The third element of the prima facie case requires a showing that the person suffered an adverse employment action due to the disability. The refusal to hire a person is an adverse action. 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring . . . of employees.") An adverse action by itself is not sufficient for a successful claim under the ADA. Instead, there must be a "specific link" between the discrimination and the adverse action to prove that the discrimination motivated the adverse action. *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005). In other words, the disability must be a motivating factor in the employer's decision for the adverse action. *Id.*

Titan argues that Chalfant did not present sufficient evidence to establish a specific link between Chalfant's alleged disability and the adverse action of refusing to hire him. The position is no longer in existence, and Campbell testified that he made the decision to terminate the second shift at the beginning of 2002. Therefore, Chalfant allegedly was not hired because there was not an available position, not because of Chalfant's disability. However, Titan did not eliminate the position until after Titan chose not to hire Chalfant. Titan accepted Chalfant's application for the position, had him take a physical exam, marked the exam results as passing and then marked the results as not passing before it decided not to hire him.

Although Chalfant did not actually fail, Titan told Chalfant that he could not work at Titan because he failed the physical exam. Titan even provided this reason for not hiring Chalfant to the Iowa Civil Rights Commission. It was not until the litigation proceedings that Titan claimed that the reason Chalfant was not hired was that the position had been eliminated. On these facts, a reasonable jury could decide that there was a specific link between the disability discrimination and Titan's decision not to hire Chalfant.

### b.        Punitive Damages

In employment discrimination cases, punitive damages are appropriate when the "complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1); *see Ollie v. Titan Tire Corp.*, 336 F.3d 680, 688 (8th Cir. 2003). To be liable for punitive damages, it is not sufficient that the employer simply knows that it is discriminating against an employee. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). The employer must also know that it "may be acting in violation of federal law." *Id*.

Titan argues that there was insufficient evidence for the district court to submit the issue of punitive damages to the jury. Viewing the evidence most favorably to Chalfant, we find sufficient evidence to show that Titan acted with malice or reckless indifference in its decision not to hire Chalfant. Campbell testified that he and Holley knew that disability discrimination was illegal under federal and state laws. Titan also had knowledge of the federal disability discrimination laws because it had been a defendant in two federal disability discrimination cases that were ultimately appealed to our circuit. *See Ollie*, 336 F.3d at 680; *Webner*, 267 F.3d at 828.

-11-

Along with this strong evidence of Titan's familiarity with disability discrimination laws at the time it made the decision, Titan's inconsistent behavior at the time of the decision and its inability to explain its behavior could lead a reasonable jury to infer that Titan knew it might be acting in violation of federal law. In short order, Titan accepted that Chalfant passed his physical, notified him that he would be hired, changed the results of his physical to "failed" and notified him that he would not be hired. Until Luthin's sudden memory improvement at trial, no one at Titan could say who made the decision to alter the outcome of the physical examination from "pass" to "fail," and no one from Titan ever explained the impetus for that change. Instead, each person simply denied that he or she had any involvement at all in the decision not to hire Chalfant. A reasonable jury could infer that this unusual decision-making process occurred because Titan was aware at the time it decided not to hire Chalfant that it "may [have been] acting in violation of federal law." *Kolstad*, 527 U.S. at 535. Therefore, there was sufficient evidence to support the submission of the issue of punitive damages to the jury.

## 2.         New Trial

We review a district court's denial of a motion for a new trial for an abuse of discretion. *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189, 1197 (8th Cir. 2001). The district court has the "sound discretion" to grant a new trial, and we will not reverse its decision unless there is a "clear showing of abuse of discretion." *Watson v. O'Neill*, 365 F.3d 609, 614 (8th Cir. 2004). However, we will reverse the district court's determination when the outcome is "against the great weight of the evidence so as to constitute a miscarriage of justice." *Foster*, 250 F.3d at 1197. Applying this standard of review, we do not find that the jury's findings of disability discrimination and punitive damages were against the great weight of the evidence so as to constitute a miscarriage of justice. Therefore, the district court did not abuse its discretion in denying Titan's alternative motion for a new trial.

**B.    Back Pay**

We review a district court's denial of a motion for remittitur regarding back pay for clear abuse of discretion. *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 496 (8th Cir. 2002). When an employer makes a discriminatory employment decision against an individual, that individual has a duty to look for another position to mitigate his damages. *Canny*, 439 F.3d at 904-05. The individual is not required to "go into another line of work, accept a demotion, or take a demeaning position." *Id.* (citing *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002)). Also, the individual's efforts do not have to "be successful but must represent an honest effort to find substantially equivalent work." *Hartley*, 310 F.3d at 1061. The employer has the burden to prove that the individual did not mitigate his damages. *Id.*

Titan argues that Chalfant did not properly mitigate his damages and that his back pay award should be reduced. The district court, however, determined that the jury could reasonably find that Titan did not meet its burden of proving that Chalfant failed to mitigate his damages. The record shows that Chalfant sought and accepted other employment within two months. He began working at AMPCO Systems, and he then continued his job search by looking at newspaper classifieds. Chalfant also turned down another job after he started working at AMPCO because that other job required lifting up to 150 pounds and Chalfant did not believe he could satisfy that requirement. Titan relies on testimony from Chalfant's and Titan's vocational experts that Chalfant would have been able to find a better paying job. There was also testimony from Chalfant's vocational expert, though, that at Chalfant's age it would be difficult to find a similar paying job. With this evidence, we cannot say the district court clearly abused its discretion in concluding that the jury could reasonably find that Chalfant mitigated his damages. *See id.* at 1062 (awarding back pay to the

plaintiff because he was close to retirement age and had a difficult time finding a comparable job).[4]

## C. Front Pay

We review a district court's decision to award a plaintiff front pay for abuse of discretion. *Ollie*, 336 F.3d at 687. Front pay "make[s] a party whole when reinstatement is impractical or impossible." *Id.* (quotation omitted). The purpose of front pay is to address the equitable needs of the employee, including his ability to find another position with a similar salary. *Id.*

Titan and Chalfant agreed that reinstatement was not practical. While Chalfant sought an award of front pay that would compensate him for six years, the district court determined that front pay should cover only one year. The district court awarded Chalfant $18,750, representing the difference between Chalfant's wages and health insurance benefits at AMPCO and what they would have been at Titan for the one-year period. The district court reasoned that Chalfant should be able to find employment similar to the Titan position within one year. Titan argues that the district court erred in providing this award because Chalfant did not attempt to find a comparable job. The district court, however, properly considered evidence that Chalfant continued to seek employment comparable to that at Titan by reviewing newspaper classifieds. Based on this evidence, the court did not abuse its discretion in its decision to award front pay.[5]

---

[4]We need not otherwise determine whether the amount of back pay awarded is appropriate because Titan's appeal only seeks to reduce the award based on its argument that Chalfant did not mitigate his damages.

[5]We need not determine whether the amount of front pay is appropriate because Titan does not challenge the amount of the district court's award. Instead, Titan only

## III.   CONCLUSION

Accordingly, we affirm the judgment of the district court.

_____

appeals the district court's decision to award front pay.