**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 26, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ARNOLD ISELIN,

      Plaintiff - Appellant,

v.

THE BAMA COMPANIES, INC.,

      Defendant - Appellee.

-----------------------------

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Amici Curiae.

No. 16-5132
(D.C. No. 4:15-CV-00566-JED-TLW)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

   In this employment-discrimination case based on disability, Arnold Iselin appeals

from a district court order that dismissed his amended complaint against The Bama

_____

   [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Companies, Inc. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

Iselin worked for Prime Industrial Recruiters, Inc., a temporary employment agency. On January 7, 2015, Prime assigned Iselin to work for Bama "as a general production worker." Aplt. App. at 31. Prime paid Iselin's salary, but Bama determined his work assignments, pay rate, work hours, and job duties.

Both Prime and Bama allegedly knew when they hired Iselin that he was disabled, either due to a torn rotator cuff, an unspecified back problem, or both. In April 2015, Bama moved Iselin to a different work location because the work he had been doing "was too hard on his back." *Id.* Iselin continued working in the general production job until either June 11 or June 16—the complaint provides both dates.

On June 16, Bama offered to make Iselin a permanent employee and give him a raise, provided he pass a "Physical Demand Assessment" (PDA). *Id.* Iselin underwent the PDA on June 18. He alleges that despite performing all of the required tasks, Bama advised him the next day that he had not passed the PDA and that his employment was therefore terminated.

Iselin obtained a right-to-sue letter from the Equal Employment Opportunity Commission and then sued Bama under the Americans with Disabilities Act (ADA) of 1990, 42 U.S.C. § 12112, as amended by the ADA Amendments Act of 2008. In an amended complaint, he claimed (1) discriminatory termination, (2) discriminatory failure to hire, (3) failure to accommodate, and (4) misuse of employment testing. Throughout

2

the complaint, Iselin alleged that he "was qualified and able to perform the essential functions of his position as a general production worker for [Bama], and he did perform these essential functions" with "occasion[al] . . . reasonable accommodation" until June 2015. Aplt. App. at 32, 33.

On Bama's motion, the district court dismissed the complaint for failure to state a claim. The court concluded that Iselin's first three claims failed because he did not pass the PDA, which showed "he could not perform the essential functions of [his] job," *id.* at 69, and he did not allege an "accommodation that [Bama] could have made," *id.* at 70. The court found that Iselin's fourth claim—misuse of employment testing—failed because the ADA allows an employer to condition new employment on a medical exam, and Bama was offering Iselin a new job.

As explained below, we reverse the dismissal of Iselin's first three claims and affirm the dismissal of his fourth claim.

## DISCUSSION
### I. Standard of Review

We review a Rule 12(b)(6) dismissal de novo. *Childs v. Miller*, 713 F.3d 1262, 1264 (10th Cir. 2013). In doing so, "we accept as true the well pleaded factual allegations and then determine if the plaintiff has provided enough facts to state a claim to relief that is plausible on its face." *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks

3

omitted). "The 12(b)(6) standard does not require that [the] Plaintiff establish a prima facie case in [the] complaint, but rather requires only that the Plaintiff allege enough factual allegations in the complaint to set forth a plausible claim." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1172 (10th Cir. 2015) (internal quotation marks omitted).

## II. Disability Discrimination
### A. Essential Job Functions

The ADA "prohibits employers from discriminating against employees on the basis of disability and requires employers to make 'reasonable accommodations' to 'qualified individuals,' unless the accommodations impose an undue hardship on the employer." *EEOC v. TriCore Reference Labs.*, 849 F.3d 929, 933 (10th Cir. 2017) (brackets omitted) (quoting 42 U.S.C. §§ 12112(a), (b)(5)(A)). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

A job function may be considered essential for a variety of reasons, including (1) "the reason the position exists is to perform that function"; (2) "there are a limited number of employees available among whom the performance of that job function can be distributed"; and/or (3) "the incumbent in the position is hired for his or her expertise or ability to perform" a highly specialized function. 29 C.F.R. § 1630.2(n)(2). Evidence showing that a particular function is essential may include:

(i) The employer's judgment as to which functions are essential;
(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
(iii) The amount of time spent on the job performing the function;

4

(iv) The consequences of not requiring the incumbent to perform the function;
(v) The terms of a collective bargaining agreement;
(vi) The work experience of past incumbents in the job; and/or
(vii) The current work experience of incumbents in similar jobs.

*Id.* § 1630.2(n)(3).

As noted above, the district court determined that Iselin's failure to pass the PDA shows he could not perform the essential functions of a general production worker. There are two problems with this determination.

First, Iselin alleged that he "was able to perform *all* of the tasks he was asked to perform during his [PDA]" and that Bama did not request any "medical information . . . or examinations" during the first five months he worked as a general production worker. Aplt. App. at 31 (emphasis added). Consequently, Bama's "advise[ment] . . . [that] he had not passed [the PDA]," *id.*, does not necessarily mean that Iselin could not perform essential job functions. There may be other reasons that Bama advised Iselin he did not pass that are unrelated to the essential job functions. It is inappropriate at the motion-to-dismiss stage to resolve this factual discrepancy, as the district court evidently did, in Bama's favor. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (explaining that resolving a Rule 12(b)(6) motion requires a court to "view [well-plead factual] allegations in the light most favorable to the plaintiff"). Though we "weigh heavily the employer's judgment regarding whether a job function is essential," the employer's judgment is not dispositive. *See Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1262 (10th Cir. 2009) (analyzing multiple factors to determine whether a certification was an essential job function). Rather, the employer's judgment is just one

5

factor that we consider, albeit an important one. *Id.*; 29 C.F.R. § 1630.2(n)(3)(i). By concluding that Iselin's failure to pass the PDA meant he could not perform the essential functions, the district court made an impermissible inference in Bama's favor.

Second, the complaint's allegations support an inference that Iselin had performed the essential functions of a general production worker throughout his tenure with Bama. An employee's ability to perform the essential functions of a job in the past indicates an ability to perform that job in the present. *See, e.g.*, *Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982, 990 (8th Cir. 2007) (despite employer's assertion that employee had failed a physical examination, employee established he could perform the essential functions of his desired job by showing he had performed the job in the past); *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1234 n.6 (11th Cir. 2005) (stating that employee's "prior job performance [working around moving equipment] create[d] a genuine issue of material fact as to whether [employee] was able to perform the essential function of working around moving equipment"); *Rizzo v. Children's World Learning Ctrs., Inc.*, 173 F.3d 254, 260 (5th Cir. 1999) (rejecting employer's argument that hearing-impaired employee was not qualified to safely drive a school van, given the lack of evidence that the employee "ever had any problems [in the past] driving the van"). By neglecting Iselin's temporary-work experience at Bama, the district court ignored several factors that we consider for the essential-job-function inquiry, namely, "[t]he current work experience of incumbents in similar jobs" and "[t]he work experience of past incumbents in the job." 29 C.F.R. § 1630.2(n)(3). But let us be clear—although we will infer from the pleadings

6

that Iselin could perform the essential job functions, we are not foreclosing the possibility that discovery evidence may show otherwise.

Still, Bama suggests that we must defer to its business judgment that Iselin could not perform essential job functions. Granted, "[t]here is no doubt in this circuit that it is an employer's province to *define* the job and the functions required to perform it." *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 890 (10th Cir.) (emphasis added; brackets and internal quotations omitted), *cert. denied*, 136 S.Ct. 690 (2015). But it is the court's province to determine whether a plaintiff has plausibly alleged an element of his ADA claim, such as whether he can perform the essential functions of the job. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will[ ] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Iselin's complaint alleges that he can perform the essential functions and that he had indeed performed them for over five months. Although there are no allegations as to what those functions might actually be, he is not "require[d] . . . to set forth a prima facie case for each element." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (internal quotation marks omitted). Rather, he must simply provide enough factual allegations to "permit the court to infer more than the mere possibility of misconduct" so "that [he] is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted).[1]

---

[1] We express no opinion as to whether Iselin could establish a prima facie case if called to do so in summary-judgment proceedings. *See Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013) ("To establish a prima facie case of discrimination under the ADA, [Iselin] must show (1) he is disabled (or perceived

7

Bama further contends that Iselin's ability to do the general-production-worker job in the past is irrelevant to whether he could perform that job going forward. Bama explains that "the two positions are different" because Iselin initially performed the job for "a temporary time period," Aplee. Br. at 10 (emphasis omitted), for a different employer (Prime), and for a lesser wage, *id.* at 11-12. But these distinguishing features say very little, if anything, about the essential *functions* of the general-production-worker job as Iselin initially performed them or as he would have performed them going forward. While factual discrepancies may become relevant at a later phase of this case, there is nothing in Iselin's complaint distinguishing his job as initially performed from the job he would have performed but for Bama's assertion that he had not passed the PDA.

Finally, Bama argues "Iselin failed to plead any facts whatsoever that suggest Bama could have accommodated" him. Aplee. Br. at 13. But Iselin sufficiently pleaded that a reasonable accommodation was available for his disability by alleging that he successfully performed the essential functions of the job for five months, "on occasion with a reasonable accommodation being made for him." Aplt. App. at 33. At this stage in the litigation, this factual allegation is enough to infer that Bama could reasonably accommodate Iselin's disability.

Thus, the district court erred in dismissing Iselin's first three claims for relief.

---

as disabled) as defined by the ADA, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered discrimination as a result of his disability.").

8

## B. Medical Examinations

The ADA generally prohibits an employer from using a medical exam to determine the existence, nature, or severity of a disability. *See* 42 U.S.C. §§ 12112(d)(2)(A), (4)(A). The limited circumstances under which medical exams are permitted vary for job applicants and current employees. In the case of a job applicant, an exam may be required "after an offer of employment has been made . . . and prior to the commencement of the employment duties of such applicant," so long as "all entering employees are subjected to such an examination regardless of disability." *Id.* § 12112(d)(3)(A). In the case of a current employee, an exam may be required if it is "job-related and consistent with business necessity." *Id.* § 12112(d)(4)(A).

Iselin claims that Bama violated the ADA by requiring him to undergo a PDA. He alleges that he was a Bama "employee"; that he performed the essential functions of his job for nearly six months; and that he "was not required to take a [PDA] prior to beginning his employment on January 7, 2015." Aplt. App. at 34.

The district court characterized Iselin as a job applicant, reasoning that he "was applying for a different position," *id.* at 71, given that the job he performed for nearly six months differed from the job he sought in terms of employer, wage, and job permanency, *id.* at 72. Because Iselin had not commenced his duties in this "different position" at the time of the PDA, the district court concluded that Bama had lawfully required the PDA. Consequently, the district court dismissed Iselin's misuse-of-employment-testing claim.

We agree with the district court's result, but not its reasoning. Iselin alleges repeatedly throughout the complaint that he was a Bama "employee." *Id.* at 32, 33, 34.

9

But in his misuse-of-employment-testing claim, he quotes the ADA's medical-exam provision governing job applicants. Further, his complaint lacks allegations that would support a misuse claim under either characterization of his relationship with Bama. For instance, if he was merely a job applicant in June 2015, he does not mention whether "all entering employees are subjected to such an examination regardless of disability," 42 U.S.C. § 12112(d)(3)(A). And if he was a Bama employee, he does not mention whether the PDA was "job-related and consistent with business necessity," *id.* § 12112(d)(4)(A).

A complaint must provide the defendant "not only fair notice of the nature of the claim, but also grounds on which the claim rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (internal quotation marks omitted). Because Iselin's misuse claim is both internally inconsistent and devoid of necessary factual allegations, it fails "to raise a right to relief above the speculative level," *id.* at 555, and it was properly dismissed.[2]

## CONCLUSION

We affirm the district court's dismissal of Iselin's fourth claim for relief (misuse of employment testing). We reverse the district court's dismissal of Iselin's other claims,

---

[2] Iselin argues that the district court should have granted him leave to amend his complaint. But he never asked the district court for that opportunity. Thus, there was no error. *See Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010) (requiring a written motion in the district court for leave to amend).

10

and we remand this case for further proceedings.

Entered for the Court


Gregory A. Phillips
Circuit Judge