**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 9, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

OLIVIA J. HOUSLEY,

    Plaintiff - Appellant,

v.

SPIRIT AEROSYSTEMS, INC.,

    Defendant - Appellee,

and

THE BOEING COMPANY,

    Defendant.

No. 15-3103
(D.C. No. 6: 13-CV-01021-EFM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH**, **O'BRIEN**, and **BACHARACH**, Circuit Judges.

---

[*] Oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

Olivia J. Housley had been working for the Boeing Company in Wichita, Kansas, for 26 years when it sold the facility to Spirit AeroSystems.[1] The sale resulted in the loss of jobs for all Boeing employees. But many of the Boeing employees were hired by Spirit. Housley was not among them. She sued Spirit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. The jury didn't buy it. Dissatisfied and proceeding pro se,[2] she appeals for relief from this court, making myriad arguments. We affirm.

## I. Background

We provide only a brief synopsis of the facts here. Other pertinent facts will be set forth in the discussion of the issues.

Housley began working for Boeing at its Wichita facility in 1979. On February 22, 2005, Boeing entered into an agreement to sell that facility to Spirit; the closing date of the sale was set for June 16, 2005. At that time, Housley was working as a Manufacturing Scheduler 3. Her direct supervisor was Mary Alumbaugh, who reported to Tom Brosius.

---

[1] Housley's claim was initially brought as part of a class action lawsuit, *Apsley v. Boeing Co.*, Case No. 05-1368-MLB-KMH (D. Kan). All of the class action claims, except the individual ADEA disparate treatment claims, were resolved in favor of Boeing and Spirit.

[2] Housley was represented by counsel in the district court. Counsel moved to withdraw after filing the motion for a new trial. The judge granted counsel's motion; Housley proceeds pro se in this appeal. Due to that status, we have liberally construed her pleadings, stopping short, however, of serving as her advocate. *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

At the time of the sale, Boeing had over 10,000 employees at the Wichita facility. Because Spirit had no employees and wanted to keep about 85% of Boeing's workforce, it relied on Boeing management for recommendations as to which employees were most deserving. To that end Boeing's human resources department developed criteria for management to use to evaluate each candidate; the criteria included skills, productivity, and teamwork/attitude. Managers were specifically told not to consider retirement eligibility or age in making their recommendations.

On March 1, 2005, Brosius met with Alumbaugh and other like managers to select which employees to recommend for employment with Spirit. Despite having given positive performance reviews, Alumbaugh did not recommend Housley for employment with Spirit because she had "lower level of skills" and "problems teaming." (R. Vol. 2 at 8.) The other managers agreed with the recommendation.

On June 16, 2005, Boeing terminated the entire workforce at its Wichita facility. The next day Spirit hired many of those employees, but not Housley. Insisting she was not hired due to her age (56), she brought this suit against Spirit under the ADEA.[3] The jury found in favor of Spirit. The judge denied her post-trial motion for a new trial.[4]

---

[3] Due to Spirit's use of Boeing's managers to make recommendations as to Spirit's workforce, Housley also sued Boeing. Boeing moved for summary judgment, arguing its managers were acting as Spirit's agents when they recommended not hiring Housley. The judge granted the motion. Housley has not appealed from that ruling.

[4] The post-trial motion also requested judgment as a matter of law under Fed. R. Civ. P. 50(b). The judge decided Housley was not entitled to such relief because she had not made a similar motion under Fed. R. Civ. P. 50(a) prior to the case being submitted to the jury. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("A motion

(Continued . . .)

## II. Discussion

We have thoroughly reviewed all of Housley's arguments. None have merit; nevertheless, we address the most promising of the lot.

A. *After-Acquired Evidence*

While still employed with Boeing, Housley surreptitiously recorded several conversations she had with her managers, co-workers, and Boeing's human resources personnel. During one of the recorded conversations on February 22, 2005 (one week before Alumbaugh recommended Housley not be hired by Spirit), Housley met with Alumbaugh and Brosius concerning her potential for advancement. During the conversation, Brosius asked Housley if she was "thinking of retirement" and whether she was "old enough." (R. Vol. 3 at 171.) Housley listed the recordings as exhibits to be used at trial in her "Final Witness and Exhibit List," apparently because her age and retirement eligibility were discussed by management personnel shortly before she failed to make the hiring cut.

The recordings presented an interesting turn of events. Sometime before the trial commenced Spirit announced its intention to use the recordings for its own limited purpose. It claimed they were after-acquired evidence of wrongdoing which could preclude an award of damages. Its reasoning: even if Housley were to prove Spirit did not hire her because of her age, she suffered no damages because she would not have

under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury.").

- 4 -

been hired had Spirit known of the secretly-recorded conversations at the time of the decision.[5] It sought a jury instruction to this effect. Housley objected (also before trial), not to the recordings themselves (indeed, she had listed them as potential trial exhibits), but to their use as after-acquired evidence of wrongdoing. She claimed neither Boeing's rules nor state or federal law prohibited the recordings and therefore they were not after-acquired evidence of wrongdoing and they were therefore irrelevant.

The record contains no ruling by the district judge on the objection, but Spirit's requested jury instruction was never given. At trial Spirit played an excerpt of the February 2005 recorded conversation to the jury and was allowed to question Housley concerning the other recordings. The record is clear—Housley specifically told the judge she did not object to the playing of the February 2005 recording for the jury. It is also clear that she did not object to the questions regarding the other recordings.[6]

---

[5] Although Alumbaugh was not aware of the recordings at the time she decided not to recommend Housley for employment with Spirit, they would have been a singularly disqualifying factor because they showed Housley was not a team player and did not have the positive attitude Spirit was looking for in its workforce.

[6] When we refer to things Housley did and said during trial we are referring to the actions of her attorney. When we refer to things Housley claims or argues on appeal we refer to her personally. There is a palpable disconnect between the two. By agreeing to the admissibility of the recordings at trial Housley clearly waived any prior objection she may have expressed to their admissibility and her failure to object to the questions posed to her amounted to a forfeiture, leaving only plain error review (which was not requested). Those technicalities may be lost on Housley as she seeks to resurrect dead issues. To recap: Spirit's requested jury instruction was never given. Late blooming objections to admitting the recordings are waived and there was no objection to the questions asked of her. No limiting jury instruction was requested. That leaves precious little to occupy our time and attention.

In testimony Spirit elicited from her, Alumbaugh said she would not have recommended any person for employment with Spirit if she knew that person had secretly recorded conversations with management while employed at Boeing. Housley objected, citing speculation and lack of foundation. The judge overruled the objection, saying: "The jury will understand that it's her assessment now of what would have happened then . . . ." (R. Vol. 3 at 208.)

In this appeal, Housley again argues the recordings were not evidence of wrongdoing. She also argues (for the first time) the recordings were irrelevant because Alumbaugh was not aware of them at the time she made her recommendation to Spirit. She alleges Spirit introduced them to mislead the jury as to the true reason she was not hired and to besmirch her character. Finally, she complains about the jury not having been adequately instructed on the proper use of the evidence. Setting aside issues of waiver and forfeiture, our review is for an abuse of discretion. *Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1146 (10th Cir. 2009).

In *McKennon v. Nashville Banner Publ'g Co.*, the employer discharged McKennon due to her age. 513 U.S. 352, 356 (1995). She brought suit under the ADEA. *Id.* at 354. During discovery, the employer learned McKennon had engaged in misconduct while still under its employ which would have led to her discharge. *Id.* at 355. The Supreme Court held this after-acquired evidence of wrongdoing could not shield the employer from liability under the ADEA but may be relevant to damages. *Id.* at 356-61. As a general rule, neither front pay nor reinstatement is an appropriate remedy

in these circumstances and back pay may be limited "from the date of the unlawful discharge to the date the new information was discovered." *Id.* at 361-63.

The recordings in this case turned out to be a double-edged sword. Housley wanted the jury to know about them for obvious reasons and considering her active promotion of their admission she is not now in a position to complain about getting what she wanted. Spirit turned the tables on her by promoting their use for a different, albeit limited, purpose—after-acquired evidence of wrongdoing. In the end Housley was obliged to take the bitter with the sweet. Before trial she did object to Spirit's proposed use of the recordings, but the status of her objections became muddled during the trial, *see supra* n.6. In any event, Spirit's purpose was arguably a legitimate one.[7] The judge did not abuse his discretion in permitting Spirit to pursue its position with respect to the recordings.

An instruction limiting the use the jury might make of the recordings (the issue of damages if the deliberations went that far) would have been appropriate, if requested. The request never came.[8] And a Fed. R. Evid. 403 ruling—balancing the probative value of the evidence (for the purpose intended) against the substantial risk of unfair prejudice—would have informed the debate, for us as well as the parties.[9] But a Rule

---

[7] *See infra* n.10.

[8] Housley claims not to have anticipated that the judge would allow the evidence but she herself listed the recordings as exhibits and affirmatively stated she had no objection to their admission. And nothing prevented her from requesting a limiting instruction when the evidence was admitted, in the final jury instructions, or both.

[9] The adversary system rests on the proposition that the parties, having the greatest

(Continued . . .)

- 7 -

403 objection was not made (as far as we can tell from the record); Housley was content with her earlier argument that recording the conversations was not wrongdoing. We do not have the judge's ruling on the wrongdoing argument (if any) and the proper resolution of the matter is not abundantly clear.[10] But, in the unlikely event that the judge erred in admitting the evidence, the error was harmless if the whole record is fairly considered. *See* Fed. R. Evid. 103(a); Fed. R. Civ. P. 61. An error is harmless unless it affected a party's substantial rights, i.e., it "had a substantial influence on the outcome or

---

interest in the outcome of litigation, are in the best position to plan their strategy and tactics, including arguments about the admission and use of evidence. Those objections must be made with precision and clarity. A judge ought not to be expected to guess why counsel have pursued (or rejected or abandoned) a particular course of action. For instance, an attorney may not request a limiting instruction because doing so would spotlight a matter best left alone. And judges should exercise restraint in presuming to know a better strategy. That point is aptly made by an apocryphal story about a lawyer who was becoming increasingly frustrated with a judge's well-meaning, but meddlesome, "help" during a trial. The lawyer asked for a bench conference at which he said. "Judge, if you are going to try this case for me, for God's sake don't lose it."

[10] In *McKennon*, the Supreme Court stated: "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." 513 U.S. at 362-63. We have not addressed the nature of misconduct necessary to constitute after-acquired evidence of wrongdoing in the failure-to-hire context.

Indeed, we have yet to decide whether the after-acquired evidence doctrine applies in a failure-to-hire case. *See Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1281 (10th Cir. 1999) (in a failure to hire case, distinguishing *McKennon* because it involved misconduct *during employment* and plaintiff was never employed by the defendant); *Leiser Constr., LLC v. N.L.R.B.*, 281 F. App'x 781, 793 (10th Cir. 2008) (unpublished) (the application of the after-acquired evidence doctrine to job applicants is "questionable"). However, other circuits have applied the doctrine in such contexts. *See, e.g., Serrano v. Cintas Corp.*, 699 F.3d 884, 903-04 (6th Cir. 2012); *Kapche v. Holder*, 677 F.3d 454, 464-68 (D.C. Cir. 2012); *EEOC v. Dial Corp.*, 469 F.3d 735, 744-45 (8th Cir. 2006).

leaves one in grave doubt as to whether it had such effect." *Abraham v. BP Am. Prod. Co.*, 685 F.3d 1196, 1202 (10th Cir. 2012) (quotations omitted).

Spirit never argued or suggested to the jury that Housley was not hired because she secretly-recorded conversations in the workplace. Rather, it argued that her doing so was evidence of her lack of teamwork/attitude—objective and legitimate criteria for employment with Spirit—which were among the reasons for passing her over in the hiring process. The judge's cryptic remark, "The jury will understand that it's her assessment now of what would have happened then," was not the equivalent of a proper (but unrequested) limiting instruction, but it did alert the jury to the limited purpose of the testimony. And Housley was allowed to explain her reasons for the recordings, inform the jury that nothing in the law or Boeing's policy prohibited her conduct, and otherwise used the February 2005 recording to her benefit. Any error in the admission of this evidence did not affect her substantial rights.[11]

---

[11] Housley also complains the entire recording should have been played for the jury but she never made such request. Other than saying the entire recording would have provided context, she fails to explain how the outcome of the trial would have been different had the entire recording been played.

In a related vein, Housley says one of the questions the jury asked during deliberations was for a transcript of the entire recording. Not so. It merely requested "the transcript of the recorded conversation," obviously referring to the transcript of the excerpt played for it during trial. (CV-13-1021-EFM-KMH, Doc. 113, Jan. 29, 2015.) The judge denied the jury's request because the transcript was not admitted as evidence.

The arguments come down to this: Housley claims the judge erred in failing to admit evidence she did not request. Interesting as that might be, the adversary system does not work that way and for good reason. *See supra* n.9.

B. *Prior Claims and Lawsuits*

Prior to trial, Housley filed a motion in limine to preclude Spirit from offering any evidence concerning (1) her prior civil rights and sex and age discrimination lawsuit against Boeing in 2000, (2) the administrative claims she filed with the Kansas Human Rights Commission and the EEOC alleging sex, religion, and national origin discrimination and retaliation against Boeing in 2003; and (3) the administrative claim she filed with the EEOC in 2005 alleging age discrimination which served as the precursor to the current lawsuit. The district judge granted the motion.

Housley argues Spirit violated the judge's order by introducing evidence of these various claims. Our review of the record reveals no violation. The only evidence introduced by Spirit to this effect involved questioning Housley about a complaint she made against Alumbaugh to a Boeing Human Resources employee in 2003 or 2004 because she felt Alumbaugh was denying her opportunities. Housley admitted she never accused Alumbaugh of denying her those opportunities due to her age but instead alleged gender bias and retaliation. Evidence of this internal complaint was not excluded by the judge's ruling. Moreover, Housley did not object to the questioning and has made no argument for plain error review. *See* Fed. R. Evid. 103(a); *Pandit v. Am. Honda Motor Co.*, 82 F.3d 376, 379 (10th Cir. 1996) (a complaining party's failure to make a contemporaneous objection to the admission of evidence limits appellate review to plain error). Her "failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011).

- 10 -

C. *Jury*

Housley makes several arguments concerning the jury.  First, she claims two jurors were improperly allowed to remain on the jury: one voiced her dislike for secretly-recorded conversations because she had been secretly recorded in the workplace and the other was a former employee of Boeing who had also sought employment with Spirit. We do not have a transcript of the voir dire.[12]  But, according to Spirit, Housley did not challenge these jurors for cause or use her preemptory challenges to remove them. Housley does not indicate otherwise, saying only that she objected to her counsel concerning the latter juror and did not object to the former juror because she did not know during voir dire that the judge would be allowing the recorded conversations to be used at trial.  By failing to make her objections known to the judge, she has failed to preserve this issue for appeal.  *See United States v. Diaz-Albertini*, 772 F.2d 654, 657 (10th Cir. 1985) ("When the basis for a challenge to a particular juror can be timely shown, the failure to object at the trial's inception constitutes a waiver of the right to attack the composition of the jury. . . .).

Second, Housley argues Spirit's corporate representative, Cassie Caster, had improper contact with two jurors and complains the jury room was located near the room

---

[12] Housley asked the district judge for a transcript of the voir dire so she could "reference certain occurrences and statements by prospective jurors in the Appeal brief . . . ." (13-CV-01021-EFM-KMH, Doc. 132, May 28, 2015.)  The judge denied the request because she had failed to make the requisite showing of need: "At a minimum, Plaintiff would need to make a representation of what those comments were and why such comments would be a basis for reversal on appeal." (*Id.*, Doc. 133, June 2, 2015.) Housley does not challenge that denial in this appeal.

assigned to Spirit for use during trial, speculating that improper contact occurred.[13] She raised these issues in her motion for a new trial. Because she had not objected or otherwise raised these issues during the trial, the judge considered them waived. We see no abuse of discretion. *See Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013) ("We review for abuse of discretion a district court's denial of a . . . motion for new trial."). "[A] party may not sit idly by, watching error be committed, and then raise the claimed error on appeal without having accorded the trial court the opportunity to respond" and correct the matter. *Green Constr. Co. v. Kan. Power & Light Co.*, 1 F.3d 1005, 1012 (10th Cir. 1993) (quotations omitted). Moreover, there is no indication of any improper contact or that the jury's verdict was in any way a product of the hypothetical improper contact or influence, only speculation.

Finally, Housley complains the jurors met with the judge and counsel after trial and expressed concern over the tone of Spirit's cross-examination of Housley. According to her, "[t]he jury was obviously influenced by the tone of the questioning rather than Housley's answer." (Appellant's Op. Br. at 3b.) But again, there was no objection to Spirit's questions based on their "tone." In any event, the judge properly instructed the jury that the statements and arguments of counsel are not evidence. We

---

[13] Caster submitted an affidavit in the district court admitting that on the first day of trial, before the judge gave any instructions regarding interactions with the jury, she may have said "hi" or "good afternoon" when passing someone within the prospective juror pool. (R. Vol. 1 at 965.) She denied, however, discussing any aspect of the case with a juror or prospective juror. After the jury was empaneled and the judge instructed the parties not to engage in even routine pleasantries with the jury, she did not have "any communication whatsoever with any juror." (*Id.* at 966.)

- 12 -

assume juries follow their instructions.  *United States v. Urbano*, 563 F.3d 1150, 1155 (10th Cir. 2009).  More importantly, a juror's statements about "the effect of anything on that juror's or another juror's vote" or "any juror's mental processes concerning the verdict" may not be used to challenge the validity of a verdict.  Fed. R. Evid. 606(b); *see also United States v. Benally*, 546 F.3d 1230, 1233 (10th Cir. 2008) ("Jury decision-making is designed to be a black box: the inputs (evidence and argument) are carefully regulated by law and the output (the verdict) is publicly announced, but the inner workings and deliberation of the jury are deliberately insulated from subsequent review.").

D. *Sufficiency of the Evidence*

While not explicitly raised as an issue on appeal, the underlying theme of Housley's arguments is that the verdict was not supported by the evidence.

"When a jury verdict is challenged on appeal, our review is limited to determining whether the record—viewed in the light most favorable to the prevailing party—contains substantial evidence to support the jury's decision."  *Bangert Bros. Constr. Co. v. Kiewit W. Co.*, 310 F.3d 1278, 1292 (10th Cir. 2002) (quotations omitted).  "Substantial evidence is something less than the weight of the evidence, and is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence." *Id.* (quotations omitted).

The jury was instructed that the only issue before it was whether Housley had shown she "met the qualifications for hire in Spirit's selection process, and that Spirit

- 13 -

would have hired [her] for the position but for her age." (R. Vol. 1 at 939.) From Housley's evidence (as well as other matters in the trial record) a jury could have inferred that she was qualified and Spirit's decision not to hire her was due to her age: (1) she had worked for Boeing for 26 years and had received solid performance reviews while employed with Boeing; (2) Alumbaugh denied her requests for more complex work and instead gave it to younger employees; (3) Alumbaugh made age-related comments in the workplace; (4) Alumbaugh recommended younger employees for employment with Spirit; (5) Housley was never told she had a lower level of skills or trouble teaming; and (6) the February 2005 tape recording showed that one week before Alumbaugh made her recommendation to Spirit, Brosius had asked Housley (in Alumbaugh's presence) about her age and whether she was thinking of retirement. The jury did not draw the inference.

The jury also heard evidence that age played no role in Alumbaugh's decision to not recommend Housley: (1) Boeing's managers were told not to consider age or retirement eligibility in the recommendation process and neither factor was considered when evaluating Housley for employment with Spirit; (2) Housley frequently complained to Alumbaugh about her co-workers; (3) she had not yet been trained to perform complex scheduling assignments; (4) while she requested additional work, it was work for which she was not adequately trained; (5) Alumbaugh recommended other employees for employment with Spirit even though they were retirement eligible due to their age (55 and over); and (6) another Boeing manager described Housley as unhappy and argumentative.

Considering the record as a whole the jury could reasonably have concluded age was not a factor in Spirit's decision not to hire Housley.[14]

**AFFIRMED.**

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

[14] Resolving uncertainty is often difficult, especially for juries. But it is a critical aspect of jury trials and so it was here. It is not the place of judges, particularly appellate judges, to reweigh the facts in order to undo a jury's reasonable decision.